## 1151

ENGINEERED PRODUCTS, INC., Appellant v. AETNA CASUALTY & SURETY COMPANY, Respondent.

(368 S. E. (2d) 674)

Court of Appeals

*Bradford W. Wyche*, of *Wyche, Burgess, Freeman & Parham*, Greenville, *for appellant.*

*Mason A. Goldsmith,* of *Love, Thornton, Arnold & Thomason,* Greenville, *for respondent.*

Heard March 23, 1988.

Decided May 9, 1988.

GOOLSBY, Judge:

This action involves an insurance coverage question. Engineered Products, Inc., appeals the circuit court's grant of summary judgment to Aetna Casualty & Surety Company. We affirm.

After Engineered Products contracted with Eaton-Kenway, Inc., to design, fabricate, and install a high-rise rack storage system at a job site in Tennessee, Aetna issued Engineered Products a comprehensive general liability policy that included a broad form comprehensive general liability endorsement. Engineered Products subcontracted with another company to erect the racks required by the system.

While the system was under construction, a violent storm collapsed and damaged nearly all the racks then in place.

A subrogee of Eaton-Kenway later sued Engineered Products and its subcontractor in connection with the collapse of the racks for breach of contract and negligence. The subrogee alleged that the racks' collapse resulted from the failure of Engineered Products and its subcontractor to comply with the anchoring specifications in the contract. It further alleged that the collapsed racks required reconstruction.

Engineered Products notified Aetna of the action, but Aetna denied coverage and declined to defend Engineered Products.

After settling the subrogee's suit, Engineered Products brought the instant action against Aetna, claiming Aetna breached the terms and conditions of the policy by refusing to defend it in the action brought by the subrogee. Engineered Products seeks, among other things, the amount it paid in settlement to the subrogee, attorney fees, and other expenses incurred in defending the suit.

Both parties moved for summary judgment.

The circuit court granted Aetna's motion, holding that Aetna, under the policy, had no duty to defend the suit brought by Eaton-Kenway's subrogee.

I.

Engineered Products contends Aetna violated its duty to defend it in the action brought by Eaton-Kenway's subrogee because the policy in question is ambiguous as to coverage and, under strict construction of exclusions against insurers, coverage was available.

The policy issued by Aetna to Engineered Products provides in pertinent part:

> I. ...
> The company will pay on behalf of the insured all sums which the insured shall become legally obliged to pay as damages because of
>
> ....
>
>   property damage
> to which this insurance applies. ...
> Exclusions
> This insurance does not apply:
> (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
>
>   ....
>
> (n) to property damage to the named insured's products arising out of such products or any part of such products;
>
>   ....

The broad form comprehensive general liability endorsement provides in part:

> VI. ...
>
>   ....
>
> (A) Exclusions (k) and (o) are replaced by the following:
> [This insurance does not apply:]

(1) to property owned ... by the insured ...;

(2) except with respect to liability under a written sidetrack agreement ...

. . . .

(d) to that particular part of any property, not on premises owned by or rented to the insured,

. . . .

(ii) out of which any property damage arises, or

(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured[.]

Engineered Products bases its claim that the policy is ambiguous as to coverage on the so-called "exception to the exclusion" found in Exclusion (a), quoted above. The claimed ambiguity arises when Exclusion (a) is read with other exclusions, especially, as we gather, Exclusion VI(A)(2) (d)(iii), also quoted above. Engineered Products argues Exclusion (a) provided coverage for a breach of warranty that work will be done in a workmanlike manner.

The flaw in Engineered Products' argument that Exclusion (a) renders the policy ambiguous is its apparent belief that exclusions should be read together and cumulatively. The settled rule, however, is just the opposite. Exclusions in an insurance policy are to be read independently of each other; they are not to be read cumulatively. *Weedo v. Stone-E-Brick, Inc.*, 81 N. J. 233, 405 A. (2d) 788 (1979). Indeed, as the New Jersey Supreme Court noted in *Weedo*, quoting Tinker, *Comprehensive General Liability Insurance—Perspective and Overview*, 25 FED'N INS. COUN. Q. 217, 223 (1975),

> "If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another."

81 N. J. at 248, 405 A. (2d) at 795; *see LaMarche v. Shelby Mutual Insurance Co.*, 390 So. (2d) 325, 326 (Fla. 1980) (construing an exclusion similar to Exclusion (a) and noting that

"an exclusion does not provide coverage but limits coverage").

We discern no ambiguity when the exclusions here involved are read with the insuring agreement independently of every other exclusion. *Bond Bros., Inc. v. Robinson*, 393 Mass. 546, 471 N.E. (2d) 1332 (1984); *St. Paul Fire and Marine Insurance Co. v. Coss*, 80 Cal. App. (3d) 784, 145 Cal. Rptr. 836 (1978). So read, the policy, because of Exclusion VI(A)(2)(d)(iii), excluded coverage of Engineered Products' liability for damages resulting from the restoration, repair, or replacement of its own defective work. *See Bond Bros., Inc. v. Robinson, supra* (where a concrete wall required remedial work on account of a subcontractor's failure to install a reinforcement bar in constructing the wall, the court held that a comprehensive general liability policy provided no coverage because faulty workmanship made the repair necessary); *Eulich v. The Home Indemnity Co.*, 503 S. W. (2d) 846 (Tex. Civ. App. 1973) (wherein the court held a policy excluded coverage of a contractor's liability for damage resulting from the collapse of a building caused by the contractor's failure to follow specifications); *cf. C. D. Walters Construction Co., Inc. v. Fireman's Insurance Company of Newark, New Jersey*, 281 S. C. 593, 316 S. E. (2d) 709 (Ct. App. 1984) (comprehensive general liability policy excluded property damage to work performed by the insured arising out of the work and did not involve accidental injury to property other than that on which the insured performed its work).

Because the replacement of the rack system lost in the storm "[was] made ... necessary by reason of faulty workmanship thereon by or on behalf of [Engineered Products]" when Engineered Products' subcontractor failed to anchor the system properly, a liability excluded from coverage by Exclusion VI(A)(2)(d)(iii), we therefore hold that Aetna had no duty to defend Engineered Products in the action brought by Eaton-Kenway's subrogee, irrespective of whether the action alleged a claim for a breach of contract or for a tort.

In reaching our conclusion, we do not overlook Engineered Products' argument based on its study of the reported cases that have considered the question of whether Exclusion (a)

is ambiguous. Engineered Products looked at these cases and counted the number of judges, including trial judges, who believe Exclusion (a)·is ambiguous. Its count indicated 57 judges who feel the exclusion is so. Engineered Products argues we, accordingly, "must give substantial, if not conclusive, weight to the opinions of the at least 57 judges in this country who believe that [E]xclusion (a) does create an ambiguity as to coverage for claims arising from damage to the insured's work product." We are unpersuaded. *See Taylor-McDonnell Construction Co. v. Commercial Union Insurance Companies*, 744 P. (2d) 892 (Mont. 1987) (wherein the court rejected an almost identical argument).

The questions of whether the property damage in issue was to the product of Engineered Products, a property damage excluded by Exclusion (n), and of whether the property damage to the rack system arose out of the rack system itself, a property damage excluded by Exclusion VI(A)(2)(d)(iii), we leave undetermined.

Affirmed.

SHAW and CURETON, JJ., concur.