661 S.E.2d 791

**USAA PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant/Respondent,**

v.

**Deborah J. CLEGG, as Personal Representative of the Estate of Allison T. Clegg; Elliot M. Lambrecht; and Douglas A. Lambrecht, Defendants**

**of whom Douglas A. Lambrecht is Respondent/Appellant.**

No. 26476.

Supreme Court of South Carolina.

Heard March 6, 2008.

Decided April 28, 2008.

Rehearing Denied June 11, 2008.

644

646

William O. Sweeny, III and William R. Calhoun, Jr., both of Sweeny, Wingate & Barrow, of Columbia, for Appellant–Respondent.

John E. North, Jr. and Pamela K. Black, both of North & Black, of Beaufort, for Respondent–Appellant.

Justice BEATTY.

In this declaratory judgment action, USAA Property and Casualty Insurance Company ("USAA"), appeals the circuit court's order granting partial summary judgment in favor of Douglas A. Lambrecht on his claim that USAA had a duty to defend him against a wrongful death and survival action arising out of an accident caused by his non-resident, emancipated son while driving a "non-owned" automobile. Lambrecht, in a cross-appeal, contends this Court is without jurisdiction to review the appeal. We certified the appeal from the Court of Appeals. We reverse.

## FACTUAL/PROCEDURAL HISTORY

On January 9, 2002, Lambrecht's nineteen-year-old son, Elliott M. Lambrecht ("Elliott"), while driving with a suspended license, was involved in a single-vehicle accident that resulted in the death of his passenger, Allison T. Clegg. At the time of the accident, Elliott was not a resident of Lambrecht's home and was driving a 1994 Mazda, which was owned by Elliott and not listed as a covered automobile on Lambrecht's insurance policy with USAA.

Subsequently, Deborah J. Clegg, Clegg's mother and personal representative of her estate, filed a wrongful death and survival action which named Elliott and Lambrecht as defendants. Based on her belief that Lambrecht owned the 1994 Mazda, Clegg asserted causes of action for negligent entrustment and negligence on the grounds that Lambrecht knew his son: (1) was driving without a valid South Carolina driver's license; and (2) had a history of numerous traffic violations involving excessive speed. Shortly after the initial filing, Clegg amended her Complaints. In the Amended Complaints, Clegg named three other defendants [1] and characterized Lambrecht as the "de facto" owner of the 1994 Mazda.

In response, USAA denied Lambrecht's request to defend him in the underlying lawsuits. USAA then filed a declaratory judgment action seeking a determination by the circuit court that there was no coverage under Lambrecht's policy and, thus, it owed no duty to defend. Specifically, USAA claimed the insurance policy in effect at the time of the accident did not name Elliott as an insured and did not list the 1994 Mazda as a covered vehicle.[2] USAA also relied on the fact that Elliott owned the 1994 Mazda and was not a resident relative at the time of the accident. Based on these allegations, USAA believed it did not have a duty to defend Lambrecht or Elliott given there were no provisions of the policy which would render coverage for the accident.

Lambrecht filed an Answer and Counterclaim in which he alleged that USAA was required to defend him in the underlying action as well as reimburse him for the attorney's fees and costs of defending the lawsuits and USAA's declaratory judgment action. Lambrecht alleged he was a "covered person" under the terms of the policy and that USAA owed him a duty to defend based on the following policy language: "We will pay damages for BI or PD for which any covered person

---

1. These individuals were Elliott's relatives and friends who also had access to the vehicle involved in the accident.

2. The insurance policy that was in effect between September 20, 2001, and March 20, 2002, named Lambrecht as the insured and listed a 1997 BMW Z3 convertible and a 1997 Ford Explorer as covered vehicles. Prior to the renewal of the policy on September 20, 2001, Elliott was deleted as a named insured and the 1994 Mazda was deleted as a covered vehicle.

becomes legally liable because of an auto accident." [3] As a result, Lambrecht filed a motion for partial summary judgment.

After a hearing on Lambrecht's motion, the circuit court issued an order on April 8, 2005, granting partial summary judgment in favor of Lambrecht. The court prefaced its order by noting the parties agreed the facts were undisputed and the motion presented a question of law "with regard to the construction of the policy of insurance issued by USAA to Lambrecht." In the recitation of the facts, the court specifically noted that at the time of the accident: (1) Elliott was nineteen years old and no longer a member of Lambrecht's household; (2) the 1994 Mazda was owned by Elliott; and (3) the 1994 Mazda was not identified as a covered automobile in the Declarations page of the policy.

The court framed the issue before it as follows: "whether [the allegations] even if ultimately proven to be legally and factually baseless, trigger USAA's obligation to defend Lambrecht in the Underlying Actions." Relying on the language of the policy and decisions from other jurisdictions, the court answered this question in the affirmative. With respect to the policy, the court found "[t]he unambiguous language of the Policy provides coverage for Lambrecht if the claims against him arise from any auto accident, not just one in which he was a driver, and was the result of the 'ownership, maintenance, or use' of 'any auto,' not just those automobiles insured under the Policy."

On May 26, 2005, USAA filed a motion for reconsideration of the April 8, 2005 order. USAA explained the filing of its motion was belated because it did not receive notice of entry of the order until May 16, 2005. Lambrecht objected to the motion as untimely. In support of his objection, Lambrecht filed an affidavit from his attorney and an accompanying facsimile transmittal sheet which indicated that Lambrecht's

---

3. In his Answer and Counterclaim, Lambrecht admitted that Elliott was neither a resident relative nor a named insured under the USAA policy. He further admitted he did not "use" or "maintain" the 1994 Mazda and it was owned by Elliott and, thus, not listed as a covered automobile under the policy. Additionally, Lambrecht stated that the 1994 Mazda was not owned by, furnished, or available for the regular use of a "family member" as defined in the policy.

attorney had faxed a letter to USAA's counsel on April 19, 2005, which stated that he had received a copy of the circuit court's order.

After a hearing on the motion,[4] the circuit court issued an order on August 22, 2005, in which it found USAA's motion for reconsideration was timely filed. As to the substantive issues, the Court affirmed its previous order but modified the basis for its decision.[5]

Both parties appealed the circuit court's order to the Court of Appeals. We certified the appeal from the Court of Appeals.

Although the parties in their cross-appeals raise multiple issues, we believe there are essentially two questions before the Court: (1) whether this Court has jurisdiction to review the appeal?; and (2) whether the circuit court erred in finding USAA had a duty to defend Lambrecht in the underlying wrongful death and survival actions? [6]

## I. JURISDICTION

■ In his cross-appeal, Lambrecht contends the circuit court erred in finding USAA's motion for reconsideration was timely given it was filed more than ten days after entry of the April 8, 2005 order. If the motion is found to have been untimely, Lambrecht asserts the circuit court was without jurisdiction to hear the motion. As a result, Lambrecht claims this Court, in turn, is without jurisdiction to review the appeal on the ground the time was not tolled for USAA to file its Notice of Appeal.

---

4. The circuit court conducted the hearing in his chambers without a court reporter present.

5. A comparison of the two orders reveals that the circuit court deleted two paragraphs from the initial order in which it addressed USAA's allegations that the policy specifically excluded coverage.

6. Because the jurisdictional question is a threshold issue in the case, we have decided to address it first despite its order in the parties' briefs. In terms of the parties remaining issues, we have consolidated some issues and addressed some out of the "briefed" order in the interest of clarity.

"Rule 203(b), SCACR, requires a party to serve his notice of appeal within thirty days after receiving written notice of the entry of a final order or judgment, and failure to do so divests this court of subject matter jurisdiction and results in dismissal of the appeal." *Canal Ins. Co. v. Caldwell,* 338 S.C. 1, 4, 524 S.E.2d 416, 418 (Ct.App.1999). "The requirement of service of the notice of appeal is jurisdictional, *i.e.,* if a party misses the deadline, the appellate court lacks jurisdiction to consider the appeal and has no authority or discretion to 'rescue' the delinquent party by extending or ignoring the deadline for service of the notice." *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 14–15, 602 S.E.2d 772, 775 (2004).

"A timely post-trial motion, including a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP, stays the time for an appeal for all parties until receipt of written notice of entry of the order granting or denying such motion." *Id.* at 15, 602 S.E.2d at 775 (citing Rule 203(b)(1), SCACR, Rules 50(e), 52(c), and 59(f), SCRCP). "A motion under Rule 59(e) is timely if it is 'served not later than 10 days after receipt of written notice of the entry of the order.' If a timely motion is made pursuant to Rule 59, the time for appeal runs from the receipt of written notice of entry of the order disposing of the motion." *Coward Hund Constr. Co. v. Ball Corp.,* 336 S.C. 1, 3, 518 S.E.2d 56, 57 (Ct.App.1999).

Strictly applying the above-outlined rules of civil and appellate procedure, there is evidence to support Lambrecht's assertion. However, for this Court to dismiss the appeal for lack of jurisdiction, it would have to essentially reject the circuit court's implicit credibility determination of USAA's counsel and find that counsel made a false representation to the circuit court regarding notice of entry of the order.

In response to Lambrecht's assertion that USAA's motion to reconsider was untimely, USAA's counsel submitted a letter to the circuit court in which she claimed she did not receive notice of entry of the final order until May 16, 2005, when Lambrecht's counsel contacted her. After receiving this notice, USAA's counsel claimed she filed the motion for reconsideration on May 26, 2005, within the requisite ten-day time period. Presumably, USAA's counsel was being truthful when she made this representation to the circuit court. *See* Rule

407(1), SCACR ("A lawyer, being a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."); Rule 3.3(a)(1)("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."); Rule 4.1(a)("In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person."); Rule 8.4(d)("It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").

Because there is no record of the hearing, this Court is unable to determine whether USAA's counsel's representations to the circuit court were under oath. Furthermore, the circuit court's order is silent regarding the basis for its decision finding that USAA's motion for reconsideration was timely filed. In light of this procedural posture, it was incumbent upon Lambrecht to file a motion pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure to request that the circuit court provide specific factual findings for its decision. *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding that where a trial court does not explicitly rule on an argument raised, and appellant makes no Rule 59(e) motion to obtain a ruling, the appellate court may not address the issue); *Floyd v. Floyd,* 365 S.C. 56, 73, 615 S.E.2d 465, 474 (Ct.App.2005) ("When a trial judge makes a general ruling on an issue, but does not address the specific argument raised by the appellant and the appellant does not make a motion to alter or amend pursuant to Rule 59(e), SCRCP, to obtain a ruling on the argument, the appellate court cannot consider the argument on appeal.").

Without explicit findings of fact by the circuit court, our decision can only be based on the implicit credibility determination of the circuit court. Deferring to the circuit court, we find USAA's counsel was credible in explaining her delay in filing the motion for reconsideration. *See Reed v. Ozmint,* 374 S.C. 19, 24, 647 S.E.2d 209, 211 (2007) (noting the circuit court judge, who saw and heard the witnesses, is in a better position to evaluate their credibility and assign comparative weight to

their testimony). Based on the record before us, we decline to reverse the decision of the circuit court.

As a result, we hold USAA's motion to reconsider and Notice of Appeal were timely. In turn, this Court has jurisdiction to review USAA's appeal.

## II. DUTY TO DEFEND

Having found this Court has jurisdiction to review USAA's appeal, the question becomes whether the circuit court erred in granting partial summary judgment in favor of Lambrecht and finding that USAA had a duty to defend Lambrecht against the underlying wrongful death and survival actions.

### A. Standard of Review

When reviewing the grant of a summary judgment motion, appellate courts apply the same standard that governs the trial court under Rule 56(c), SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 340, 611 S.E.2d 485, 488 (2005); *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

"Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Middleborough Horizontal Prop. Regime Council of Co–Owners v. Montedison S.p.A.*, 320 S.C. 470, 479, 465 S.E.2d 765, 771 (Ct.App.1995) (citing *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E.2d 169 (1991)). "Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied." *Nelson v. Charleston County Parks & Recreation Comm'n*, 362 S.C. 1, 5, 605 S.E.2d 744, 746 (Ct.App.2004). "However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ,

summary judgment should be granted." *Ellis v. Davidson*, 358 S.C. 509, 518, 595 S.E.2d 817, 822 (Ct.App.2004).

## B. Insurer's Duty to Defend

In *Sloan Construction Company, Inc. v. Central National Insurance Company of Omaha*, this Court explained the theoretical underpinnings of an insurer's duty to defend:

A liability insurance policy contains two insuring provisions of major significance: one, providing for the payment by the insurer of sums the insured shall become obligated to pay, the other providing, in substance, for the defense of any suit alleging bodily injury or property damage and seeking damages payable under the terms of the policy. The latter clause also provides, as a rule, that such a defense will be furnished even if any of the allegations of the suit are groundless, false or fraudulent.

The duty to defend is separate and distinct from the obligation to pay a judgment rendered against the insured. *American Casualty Co. v. Howard*, 187 F.2d 322, 327 (4th Cir.1951). Although these duties are related in the sense that the duty to defend depends on an initial or apparent potential liability to satisfy the judgment, the duty to defend exists regardless of the insurer's ultimate liability to the insured.

\* \* \*

Indemnity contemplates merely the payment of money. The agreement to defend contemplates the rendering of services.

*Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 186–87, 236 S.E.2d 818, 820 (1977) (citations omitted).

 Although an insurer's duty to defend is separate and distinct from its obligation to pay a judgment, the two are in a sense interrelated. If the facts alleged in the complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend. *S.C. Med. Malpractice Liab. Ins. Joint Underwriting Assn. v. Ferry*, 291 S.C. 460, 463, 354 S.E.2d 378, 380 (1987). "Accordingly, the allegations of the complaint determine the insurers duty to defend." *Id.*; *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999) ("It is well settled that an insurer's

duty to defend is based on the allegations of the underlying complaint."). "A liability insurer must defend any suit alleging bodily injury or property damage seeking damages payable under the terms of the policy." *B.L.G. Enters., Inc.,* 334 S.C. at 535, 514 S.E.2d at 330. "However, an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." *Id.*

▮▮▮▮▮ "Insurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc.,* 334 S.C. at 535, 514 S.E.2d at 330. "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Sloan Constr. Co.,* 269 S.C. at 185, 236 S.E.2d at 819. "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *B.L.G. Enters., Inc.,* 334 S.C. at 535, 514 S.E.2d at 330. "Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995).

Applying the foregoing to the facts of the instant case, we believe for several reasons the circuit court erred in finding USAA had a duty to defend Lambrecht against the underlying wrongful death and survival suits. Initially, we find the circuit court overlooked an analytical step. In our view, the circuit court should have first determined whether the allegations in Clegg's Complaints brought the claims within policy coverage. Instead, the circuit court omitted this step and considered factual allegations presented to it at the summary judgment stage that were not part of the Complaints. The absence of this analysis is significant because the circuit court ordered USAA to reimburse Lambrecht for attorney's fees and costs in defending the initial filing of the lawsuit as well as defending against USAA's declaratory judgment motion. As will be discussed, we hold USAA did not have a duty to defend from the onset of the litigation.

An analysis of this issue is dependent upon a comparison of the relevant USAA policy provisions with the allegations in Clegg's Complaint.

The policy provisions at issue are as follows:

## INSURING AGREEMENT

We will pay damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. Our duty to settle or defend ends when our limit of liability for these coverages has been paid or tendered. We have no duty to defend any suit or settle any claim for **BI** or **PD** not covered under this policy.

## EXCLUSIONS

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of: (2) Any vehicle, other than your **covered auto** that is owned by **you,** or furnished or available for **your** regular use.

## DEFINITIONS

A. **You** and **your** refer to the "named insured" shown in the Declarations and spouse if a resident of the same household.

E. **Family member** means a person related to you by blood, marriage, or adoption who is a resident of **your** household. This includes a ward or foster child.

L. **Your covered auto** means:

 1. Any vehicle shown in the Declarations.

[A] **covered person** as used [in the Liability Coverage Section] means:

 1. **You** or any **family member** for the ownership, maintenance, or use of any auto or **trailer.**

 Here, Clegg's initial Complaint and Amended Complaints alleged causes of action against Lambrecht for negligent entrustment and negligence [7] based on Clegg's belief that Lambrecht was the owner or "de facto" owner of the 1994

---

7. "The theory of negligent entrustment provides: the owner or one in control of the vehicle and responsible for its use who is negligent in entrusting it to another can be held liable for such negligent entrustment." *Am. Mut. Fire Ins. Co. v. Passmore*, 275 S.C. 618, 621, 274 S.E.2d 416, 418 (1981) (citations omitted).

Mazda. Taking these allegations as true, section B(2) of the USAA policy specifically excluded coverage. That provision explicitly excluded coverage for the "ownership" of a vehicle other than Lambrecht's covered automobiles. Because the 1994 Mazda was not listed in the Declarations section of the policy, it did not constitute a covered automobile. Accordingly, based solely on the allegations in Clegg's Complaints, the USAA policy did not provide coverage. Therefore, although USAA has a continuing potential duty to defend based on its contractual relationship with Lambrecht, it was not required to defend Lambrecht against this underlying lawsuit given the duty was limited by the coverage outlined in the insurance policy.

 Furthermore, to the extent Lambrecht argues that this issue is controlled entirely by the "Insuring Agreement" provision, we find this assertion to be without merit. In our view, this policy provision cannot be read in isolation. Instead, the allegations in the Complaint must be applied to the policy in its entirety, which necessarily includes the exclusions section. *See Falkosky v. Allstate Ins. Co.*, 311 S.C. 369, 372, 429 S.E.2d 194, 196 (Ct.App.), *aff'd as modified*, 312 S.C. 210, 439 S.E.2d 836 (1993) (recognizing an insurer has no duty to defend where liability is excluded from coverage); *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 168, 383 S.E.2d 2, 4 (Ct.App.1989) (finding insurer had no duty to defend where policy expressly excluded coverage for damages alleged in the Complaint).

 Although the cases addressing an insurer's duty to defend generally limit this duty to whether the allegations in a Complaint are sufficient to bring the claims within the coverage of an insurance policy, an insurer's duty to defend is not strictly controlled by the allegations in Complaint. Instead, the duty to defend may also be determined by facts outside of the complaint that are known by the insurer. *See BP Oil Co. v. Federated Mut. Ins. Co.*, 329 S.C. 631, 638, 496 S.E.2d 35, 39 (Ct.App.1998) ("Although the determination of an insurer's duty to defend is based upon the allegations in a complaint . . . in some jurisdictions, the duty to defend will be measured by facts outside of the complaint that are known by the insurer."). The instant case provides such a scenario given USAA pre-

sented additional facts at the declaratory judgment stage that were not initially known to Clegg at the time she filed her Complaints.

Turning to the actual analysis in the circuit court's order, we find the court erred in ruling that the USAA policy provided coverage for the 1994 Mazda when it was undisputed by the parties that Lambrecht's emancipated adult son, who was not a resident relative, was the owner of the vehicle.

First, under the terms of the policy, neither Lambrecht nor his son was a "covered person." Because Elliott did not reside in Lambrecht's household, he could not be considered a "covered person" in light of the fact that he was not a "family member." Given Lambrecht admitted that he did not "own," "maintain," or "use" the 1994 Mazda at the time of the accident, he also did not meet the definition of a "covered person."

Secondly, even if Lambrecht could be deemed a "covered person," we disagree with the circuit court's finding that he could be potentially liable for a claim of negligent entrustment arising from the negligent use of a noncovered automobile by someone other than the insured. A review of the cases cited by the circuit court reveals that they do not support the court's holding. In three of the cited cases, parents were found to be liable for damages arising out of their children's negligent driving. See Brown v. Champeau, 537 So.2d 1120, 1122 (Fla.Dist.Ct.App.1989)(en banc) (holding insurance policy covered mother, who became statutorily liable for her minor son's driving where she signed for his license application, for damages resulting from her son's negligence while driving his own vehicle); Eason v. Fin. Indem. Co., 721 So.2d 528, 530 (La.Ct.App.1998) (finding insurance policy provided coverage for parents who were held vicariously liable by statute for damages resulting from their minor child's negligent driving; noting, under policy, that mother would not have been responsible for "major child" as a "family member"); Scott v. Am. Standard Ins. Co. of Wisconsin, 132 Wis.2d 304, 392 N.W.2d 461, 464 (1986) (ruling insurance policy provided coverage for mother who was statutorily liable for her minor son's driving negligence where she sponsored her minor son in order to allow him to obtain a driver's license). We find these cases

are distinguishable given the child at issue was a minor and the parents were statutorily liable for damages caused by their children's negligence. In the instant case, Elliott was an emancipated child at the time of the accident and there is no statutorily-imposed obligation for Lambrecht to be responsible for damages caused by Elliott's negligence. Finally, the fourth case relied on by the circuit court is inapposite. *Hertz Corp. v. Amerisure Ins. Co.*, 627 So.2d 22, 23 (Fla.Dist.Ct.App. 1993) (holding insurance policy provided coverage for insured who was legally liable for a friend's negligent driving under the state's dangerous instrumentality doctrine where insured used his credit card to rent a vehicle for his friend). Here, there is no comparable dangerous instrumentality statute in this state. Furthermore, the undisputed facts established that Elliott, not Lambrecht, owned the vehicle involved in the accident. Thus, we do not believe that Lambrecht could be held "legally liable," as required by the terms of the policy, for Elliott's negligence based on these cases.

Additionally, there are cases from other jurisdictions in which the courts have held that the parent of an emancipated adult child driving a non-owned vehicle was not liable for the child's alleged negligent acts. *See Tollefson v. Am. Family Ins. Co.*, 302 Minn. 1, 226 N.W.2d 280, 284–85 (1974) (recognizing that insurance policy did not provide coverage for accident of emancipated child, who did not reside in insured's household and was driving a non-owned vehicle); *see also Safeco Ins. Co. of Am. v. Parks*, 122 Cal.App.4th 779, 19 Cal.Rptr.3d 17, 24–28 (2004) (holding insurer had no duty to defend minor child where she was driving a non-owned vehicle and was not a member of insured's household); *Crawley v. State Farm Mut. Auto. Ins. Co.*, 90 Hawai'i 478, 979 P.2d 74, 80–83 (1999) (finding insurer owed no duty to defend insured for negligent actions of minor child, who was not a resident relative, while driving a non-owned vehicle); *Universal Underwriters Ins. Co. v. State Farm Auto. Ins. Co.*, 128 Ill.App.3d 696, 83 Ill.Dec. 710, 470 N.E.2d 1130, 1134 (1984) (concluding insurer of minor's parents owed no duty to defend them for suits arising out of minor child's acts while driving a non-owned vehicle given child did not live with the insureds); *Nichols v. Atnip*, 844 S.W.2d 655, 660–63 (Tenn.Ct.App.1992) (affirming summary judgment for parents of emancipated child, finding

parents did not negligently entrust automobile to child and parents owed no duty to accident victims to supervise child's driving); *Coop. Fire Ins. Ass'n of Vermont v. Am. Prot. Ins. Co.,* 157 Vt. 380, 385, 599 A.2d 360 (1991) (holding insurer was not required to defend insured against negligent entrustment and supervision causes of action arising from minor child's use of non-covered automobile); *cf. Nat'l Union Fire Ins. v. Carricato,* 439 S.W.2d 957, 959 (Ky.1969) (finding emancipated child was covered under parents' insurance policy where she lived in parents' home and was the beneficial owner of the vehicle); *see generally* 8A Lee R. Russ, *Couch on Insurance* 3d §§ 118:21, 39 (Supp.2007) (discussing liability coverage for the use of non-owned vehicles).

### III. USAA's REMAINING ISSUES

 In its brief, USAA raises two additional issues. USAA contends the circuit court erred in: (1) imposing a duty to defend when neither a covered auto nor a covered person was involved in the accident because such a ruling expands automobile liability policies beyond what the Legislature and the Supreme Court intended; and (2) granting summary judgment as to whether USAA owed Respondent a defense and an award of costs and fees when there had not been adequate time for discovery in the case.

Because these issues were neither raised to nor ruled upon by the circuit court, we find they were not properly preserved for our review. *See B & A Dev., Inc. v. Georgetown County,* 372 S.C. 261, 271, 641 S.E.2d 888, 894 (2007) (holding that issues must be raised and ruled upon in the trial court to be preserved for appellate review); *Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that issues must be raised and ruled upon in the trial court to be preserved for appellate review). Furthermore, in light of our decision finding USAA did not have a duty to defend, we decline to address USAA's remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling that an appellate court need not review remaining issues when disposition of prior issues is dispositive).

## CONCLUSION

Based on the foregoing, we find the circuit court correctly concluded that USAA's motion to reconsider was timely filed. Thus, we have jurisdiction to review USAA's appeal. As to the merits of the appeal, we reverse the decision of the circuit court finding USAA had a duty to defend and reimburse Lambrecht. Because the USAA policy did not provide coverage to Lambrecht under either the allegations of Clegg's Complaints or the additional facts known to USAA and presented at the declaratory judgment stage, we hold USAA had no duty to defend and reimburse Lambrecht.

**REVERSED.**

MOORE, Acting Chief Justice, WALLER, J., and Acting Justices E.C. BURNETT, III and APHRODITE K. KONDUROS, concur.